UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

QUENTIN A. MAROZZI,

       Plaintiff,

  v.

BLAKE CATLIN, *et al.*,

       Defendants

———————————————————

**DECISION AND ORDER**

**and**

**REPORT AND
RECOMMENDATION**

24-CV-6489 EAW CDH

## <u>INTRODUCTION</u>

*Pro se* plaintiff Quentin A. Marozzi ("Plaintiff") is an inmate currently confined at the Fishkill Correctional Facility. Plaintiff's initial complaint alleged that three defendants—Trinity Service Group, Inc. ("Trinity"),[1] Trinity Food Service Director Blake Catlin ("Catlin"), and the Monroe County Jail—were failing to provide him with a diet in keeping with his Rastafarian faith. (Dkt. 1). He also moved to proceed *in forma pauperis*. (Dkt. 2). The Court granted Plaintiff's motion to proceed *in forma pauperis* and screened his complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, dismissing some claims, holding that others could proceed to service, and granting him leave to amend still other claims. (Dkt. 3) (the "First Screening Order").

---

[1] Plaintiff named Trinity as "Trinity Food, Inc." and so prior orders entered in this case referred to it as such. The *Valentin* response filed the by Monroe County Attorney's Office clarified that Trinity's actual full name is "Trinity Service Group, Inc." (Dkt. 14; *see also* Dkt. 12 at 7).

Plaintiff then filed an amended complaint (Dkt. 6) and—before any action was taken on that pleading—a second amended complaint (Dkt. 7). The Court "reject[ed] the second amended complaint as exceeding the parameters of the leave that was given to file an amended complaint and deem[ed] Plaintiff's amended complaint the operative pleading" in this action. (Dkt. 12 at 2 (internal citation omitted)). The Court then screened the amended complaint and held that Plaintiff's claims under 42 U.S.C. § 1983 against Trinity and Catlin could proceed to service. (*Id.* at 6).

Presently before the Court is Plaintiff's motion to amend his complaint for a third time. (*See* Dkt. 28; Dkt. 29). For the reasons discussed below, I grant Plaintiff's motion to amend in part and I recommend that it be denied in part.

## FACTUAL BACKGROUND

In reviewing Plaintiff's motion to amend, the Court accepts as true the allegations of his proposed third amended complaint and draws all reasonable inferences in his favor. *See Buksh v. Sarchino*, 736 F. Supp. 3d 221, 226 (D. Vt. 2024) ("[A] court considering a motion to amend a complaint must accept the facts alleged as true and make all reasonable inferences in favor of the party seeking to amend."). In addition, in light of Plaintiff's *pro se* status, the Court construes his proposed third amended complaint "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013). Further, "[a] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

## I.    Allegations of the Operative Complaint

In the first amended complaint, Plaintiff alleges that he has "been in the custody of the Monroe County Jail since" September 11, 2023 "awaiting trial" on "state felony" charges. (Dkt. 6 at 10). According to Plaintiff, during his time at the Monroe County Jail, Trinity and Catlin failed to provide him with a diet in keeping with his religious needs as a Rastafarian. (*Id.* at 2, 6-7, 10-12). More specifically, Plaintiff alleges that he follows the Rastafarian Ital diet, which requires him to eat only "organic and 'natural'" foods and to "avoid[] pork," "crustaceans," and any food with "additives, including sugar and salt." (*Id.* at 11). The dictates of his faith further require him to eat out of a Styrofoam "disposable tray" and to be served a breakfast of "ackee, plantain, boiled food, breadfruit, and [m]ango-[p]ineapple juice." (*Id.* at 10-11).

Plaintiff asserts that the Genesee County Jail had previously "accom[mo]dated" his dietary needs, which he characterizes as "simple." (*Id.*). But Trinity and Catlin "refused" to do the same. (*Id.* at 11). Instead, Plaintiff was given a "soy based, high sodium diet that is not natural" and "contain[s] high amounts of additives." (*Id.* (internal quotation marks omitted)).

Although Plaintiff "filed grievances with Monroe County Jail" on July 24, July 25, and July 29, 2024, nothing was done to rectify the situation. (*Id.* at 10-12). Instead, Trinity and Catlin "acted in concert to refuse [Plaintiff's religious] needs and

in turn have punished him by forcing him to eat the unhealthy, non-Rastafarian diet or be left to starve." (*Id.* at 12). Plaintiff attached to the first amended complaint copies of his grievances and the official responses. (*Id.* at 13-14, 16, 19-21, 23).

## II.    **Allegations of the Proposed Third Amended Complaint**

In his proposed third amended complaint, Plaintiff asserts similar facts to those alleged in the first amended complaint: namely, that he has been held at the Monroe County Jail since September 11, 2023, and that during that time, several defendants have failed to provide him with the Rastafarian Ital diet that he requires.[2] (Dkt. 28 at 5-8, 12-14).

In contrast to Plaintiff's first amended complaint, however, the proposed third amended complaint does not just assert claims against Trinity and Catlin. In fact, Plaintiff does not list Catlin in either the caption or in the list of defendants. (*Id.* at 1-4). And the proposed third amended complaint adds five new defendants: Monroe County, Monroe County Sheriff Todd Baxter ("Baxter"), Monroe County Sergeant and Grievance Coordinator C. Derousie ("Derousie"), Monroe County employee Jennifer Rivers ("Rivers"),[3] and Monroe County Jail Superintendent Matt Vanduzee

---

[2]    The proposed third amended complaint reiterates Plaintiff's previous assertions that he has been held at the Monroe County Jail since September 11, 2023, "to the date of this complaint." (Dkt. 28 at 5). But as previously recognized (Dkt. 12 at 6), and as a notice of change of address filed by Plaintiff reflects, Plaintiff was moved from the Monroe County Jail by December 2024 (Dkt. 8). He is currently held at Fishkill Correctional Facility. (Dkt. 37).

[3]    Plaintiff does not identify Rivers' job title or employer, but lists her address as 130 S. Plymouth Ave Rochester, NY 14614, which is the same address as the other individual defendants, who are all identified as Monroe County employees or officials.

("Vanduzee"). (*Id.* at 1-4, 12-14). Plaintiff asserts that all of the new defendants were involved in denying him food in keeping with his Rastafarian Ital diet. (*Id.* at 2-4, 13-14). More specifically, he alleges that Monroe County "[d]oes [n]ot reco[gn]ize 'Ital' [d]iet"; that Baxter "[d]enied [his] request" (presumably for Ital food, although he does not elaborate); and that Vanduzee "refused to accom[modate Plaintiff's d]iet." (*Id.* at 3-4). He further alleges that Rivers "said [that Plaintiff's r]elig[i]o[n i]s '[j]ust a [b]el[ief]'" and that Derousie "was personally involved with th[e grievance] process" pursuant to which his accommodation requests were denied. (*Id.* at 2, 4; *see also id.* at 16, 18-20, 22-23, 28, 30, 32, 35).

Plaintiff also asserts that he "sent internal communication forms to" Rivers, Trinity, and Derousie "with [his] concerns." (*Id.* at 9). He again attaches copies of his grievances and the decisions on them, adding additional grievances and denials that were not included with the first amended complaint. (*Id.* at 16-35; *see* Dkt. 6 at 13-24). Many of the official responses he includes are signed by Derousie in her capacity as the Grievance Coordinator for the Monroe County Jail. (Dkt. 28 at 16, 18-12, 22-23, 28, 30, 32, 35).

Plaintiff's grievances provide additional context to his claims. For instance, in a November 23, 2024 grievance, Plaintiff states that Rivers "[i]s refusing to give [him] a Kos[h]er [d]ietary tray," telling him that such a thing "has nothing to do with [his] relig[i]on." (*Id.* at 23). Plaintiff further reiterates his long struggle to be given food in

---

(*See* Dkt. 28 at 2-4). The Court therefore assumes she is a Monroe County employee of some kind.

keeping with his Rastafarian faith, stating that he has filed "grievance after grievance[] after grievance" and has informed Derousie, Baxter, Vanduzee, Trinity, Catlin, and Rivers about the situation. (*Id.* at 24-26). Plaintiff also includes "Exhibit B," which apparently is a list of grievance determinations he has received, showing that he has had a grievance decision denied by Derousie at least three times and that the "Superintendent"—presumably Vanduzee, although that is not specified—has denied those appeals at least twice. (*Id.* at 27). The document, however, does not provide any information about the claims underlying those denials. (*Id.*).

Like the first amended complaint, the proposed third amended complaint asserts claims under § 1983. (*Id.* at 2, 38; *see* Dkt. 6 at 3). The proposed third amended complaint also includes a new page referencing Sections 7024.6 and 7009.4 of New York State Minimum Standards and Regulations for Management of County Jails and Penitentiaries. (Dkt. 28 at 15).

## PROCEDURAL BACKGROUND

As noted above, this case has been referred to me for all pretrial matters excluding dispositive motions. (Dkt. 20).

Plaintiff filed his original complaint in this action on August 7, 2024, asserting claims against Monroe County Jail, Trinity, and Catlin (Dkt. 1); he also moved to proceed *in forma pauperis* (Dkt. 2). About a month later, and also as already noted above, the Court granted that motion and screened the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (Dkt. 3). The Court liberally construed Plaintiff's complaint as asserting (1) two claims under 42 U.S.C. § 1983—namely, a First

Amendment free exercise claim and a Fourteenth Amendment conditions of confinement claim—and (2) a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Dkt. 3 at 3-5).

In the First Screening Order, the Court held that Plaintiff's § 1983 and RLUIPA claims against Catlin and Trinity in their individual capacities could proceed to service and dismissed Plaintiff's claims against Monroe County Jail without leave to amend. (*Id.* at 11). In addition, the Court dismissed Plaintiff's claims against Catlin and Trinity in their official capacities but granted Plaintiff leave to amend those claims within 45 days of the date of the First Screening Order. (*Id.* at 11-12). The Court further ordered that any amended complaint would replace the prior complaint and render it of no legal effect and must comply with leave to amend. (*Id.* at 11). Finally, noting that Plaintiff's complaint had not redacted certain information protected by Federal Rule of Civil Procedure 5.2, the Court ordered that any amended complaint must comply with Rule 5.2's redaction requirements. (*Id.*).

Approximately one week later, Plaintiff filed an amended complaint. (Dkt. 4). But because Plaintiff had failed to redact information protected by Rule 5.2, the Court instructed the Clerk of Court to strike the amended complaint and ordered that Plaintiff "ha[d] until December 2, 2024, to re-file his amended complaint" in compliance with Rule 5.2. (Dkt. 5 (emphasis omitted)). On November 19, 2024, Plaintiff re-filed his amended complaint with redactions (Dkt. 6), and only a few weeks later, filed a second amended complaint (Dkt. 7).

On April 9, 2025, the Court issued a second Screening Order (the "Second Screening Order"). (Dkt. 12). As an initial matter, the Court rejected the second amended complaint "because it assert[ed] new claims against new defendants" and thus "exceed[ed] the parameters of the leave that was given to" amend.[4] (*Id.* at 2-3). The Court therefore deemed Plaintiff's first amended complaint (Dkt. 6) to be the operative pleading. (*Id.* at 2). The Court further explained that Federal Rule of Civil Procedure 15 barred Plaintiff from filing another amended complaint without the permission of the opposing party or Court. (*Id.* at 4). Thus, the Court held, "[i]f Plaintiff wishe[d] to add additional claims or defendants, he must seek permission to do so by filing a properly supported motion for leave to amend" in accordance with Federal Rule of Civil Procedure 15 as well as Local Rule of Civil Procedure 15.[5] (*Id.*).

The Court then screened the first amended complaint. (*See* Dkt. 12 at 5-6). Because the first amended complaint "name[d] Catlin and Trinity in their individual capacities only" and did not include any facts satisfying "any of the elements required to plausibly allege official capacity claims against th[o]se defendants," the Second Screening Order dismissed as abandoned Plaintiff's claims against Catlin and Trinity in their official capacities. (*Id.* at 5). With respect to Plaintiff's RLUIPA claim, the

---

[4]     The Second Screening Order further stated that "[i]f Plaintiff wishe[d] to add additional claims or defendants, he must seek permission to do so by filing a properly supported motion for leave to amend" pursuant to Federal Rule of Civil Procedure 15. (Dkt. 12 at 4).

[5]     Among other things, Local Rule 15(a) requires that "[a] movant seeking to amend or supplement a pleading or to join or interplead parties pursuant to Fed. R. Civ. P. 14, 15, or 19-22 must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion." Loc. R. Civ. P. 15(a).

Court reiterated that a plaintiff may seek injunctive relief only—and not damages—under RLUIPA. (*Id.*; *see* Dkt. 3 at 7). Because, in the time since the initial complaint had been screened, Plaintiff had been "transferred from the Monroe County Jail to the New York State Department of Corrections and Community Supervision," the Court held that any claims for injunctive relief related to Plaintiff's treatment at Monroe County Jail were no longer live and accordingly dismissed the RLUIPA claim as moot. (*Id.* at 5-6). As in the First Screening Order, the Court found that Plaintiff's § 1983 freedom of religion and conditions of confinement claims survived screening and therefore ordered the United States Marshals Service to effect that service. (*Id.* at 7).

On August 14, 2025, Plaintiff submitted a third amended complaint. (Dkt. 28). Because Federal Rule of Civil Procedure 15 barred Plaintiff from filing a new amended complaint without leave of the Court or the opposing party, the Court construed Plaintiff's filing as a motion to amend and a proposed third amended complaint. (Dkt. 29). The Court set a briefing schedule on the motion to amend (*id.*), but no response was filed, and the time to do so has passed.

More recently, on October 9, 2025, Plaintiff moved for the appointment of counsel. (Dkt. 35). In that motion, he included a request for a 90-day extension of time to serve Catlin. (*Id.* at 1). In a telephone conference held on November 19, 2025, the Court denied Plaintiff's motion for counsel without prejudice and stated that it would address the request for an extension of time to serve Catlin in due course. (*See* Dkt. 43).

**DISCUSSION**

## I.    Legal Standard

### A.    Leave to Amend under Rule 15

Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course" within a certain period. Fed. R. Civ. P. 15(a)(1). "[A]fter the time to amend as of right has passed . . . [,] a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent." *Zou v. Han*, No. 23-CV-02370-JMA-JMW, 2024 WL 4100221, at *3 (E.D.N.Y. Sept. 6, 2024), *appeal dismissed*, No. 24-2402, 2024 WL 5457084 (2d Cir. Dec. 23, 2024). Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), a standard that the Second Circuit has characterized as "liberal," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). That is, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

But "freely" not does not mean *always*. Notwithstanding Rule 15's liberal standard, "a district court may 'deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 334 (S.D.N.Y. 2019) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). A motion to amend is futile when "as a matter of law," the "proposed amendments would fail to cure prior

deficiencies or to state a claim under Rule 12(b)(6)," even when the court " accept[s] as true all non-conclusory factual allegations . . . and draw[s] all reasonable inferences in plaintiff's favor." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Ultimately, "[t]he decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion." *Wood v. Mike Bloomberg 2020, Inc.*, 343 F.R.D. 470, 473 (S.D.N.Y. 2023) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971)).

"Moreover, while Rule 15 . . . generally governs the amendment of complaints, in the case of proposed amendments where new defendants are to be added, the Court must also look to Rules 20 and 21." *Groves v. Davis*, No. 9:11-CV-1317, 2014 WL 4684998, at *17 (N.D.N.Y. Sept. 19, 2014). Rule 20 provides that "a party may join two or more defendants in the same suit if 'any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.'" *Lewis v. Synchrony*, No. 21-CV-9131 (NSR), 2025 WL 3013142, at *2 (S.D.N.Y. Oct. 28, 2025) (quoting Fed. R. Civ. P. 20(a)(2)(A)-(B)). "Courts have interpreted the requirements of Rule 20(a) liberally so as to promote judicial economy and to allow related claims to be tried within a single proceeding." *Ocasio v. City of Canandaigua*, 344 F.R.D. 158, 165 (W.D.N.Y. 2022).

Rule 21, for its part, provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The rule is "intended

to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *Zielinski v. Annucci*, No. 9:17-CV-1042-DNH-TWD, 2019 WL 2870337, at *6 (N.D.N.Y. Mar. 19, 2019) (quoting *Gosten v. Potter*, No. 9:08-CV-0478 (FJS/ATB), 2010 WL 4774238, at *5 (N.D.N.Y. Sept, 21, 2010)), *adopted*, 2019 WL 2869608 (N.D.N.Y. July 3, 2019). Like Rule 15, both Rule 20 and Rule 21 "are construed liberally." *Davidson v. Desai*, No. 03-CV-121S, 2014 WL 13066013, at *2 (W.D.N.Y. Oct. 28, 2014).

## B.    <u>Scope of Magistrate Judge Authority</u>

There is conflicting guidance from the Second Circuit regarding whether a motion to amend a complaint is dispositive, and therefore within a magistrate judge's authority to decide under 28 U.S.C. § 636(b)(1)(A). *Compare Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (stating in dicta that "a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent"), *with Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 25 (2d Cir. 2012) (summary order) (stating that magistrate judge's decision granting a plaintiff's motion to amend on condition that amended complaint could not contain any state law claims "not only denied plaintiff leave to plead new claims, but effectively dismissed [plaintiff]'s existing state-law claims, which had survived the defendant's motion to dismiss" and thus "amounted to a ruling on a dispositive matter").

"In recent years, many district and magistrate judges within [this] Circuit have come to the conclusion that a motion to amend is not a dispositive motion, regardless of the grounds on which it is decided." *Reed v. City of New York*, No. 20-CV-8352 (MMG), 2024 WL 3674852, at *1 n.1 (S.D.N.Y. Aug. 5, 2024) (citations and quotation omitted). "Other courts within the Second Circuit make a distinction between denials based on undue delay or prejudice, which are viewed as non-dispositive, and denials based on futility, which are viewed as akin to the grant of a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6) and therefore dispositive." *Adams v. Bloomberg L.P.*, No. 20-CV-7724 (RA) (JLC), 2024 WL 3269274, at *1 n.1 (S.D.N.Y. July 2, 2024).

As another magistrate judge in this District recently observed, "[a]t most, it seems that motions to amend are dispositive only when the magistrate judge denies based on futility." *Getman v. Vondracek*, 731 F. Supp. 3d 524, 528 (W.D.N.Y. 2024). Therefore, in an attempt to be cautious and because my conclusions are based in part on the futility of certain of Plaintiff's proposed amendments, I am issuing a combined Decision and Order and Report and Recommendation. *See, e.g.*, *Watson v. Wright*, No. 08-CV-00960 A M, 2011 WL 1118608 (W.D.N.Y. Jan. 11, 2011) (issuing Report, Recommendation and Order where certain proposed amendments were denied on futility grounds), *adopted*, 2011 WL 1099981 (W.D.N.Y. Mar. 24, 2011). More specifically, the Decision and Order addresses the proposed amendments that I am granting, and the Report and Recommendation addresses the proposed amendments that I recommend be denied.

III.    **Application**

    A.    **Proposed New Claims**

Like the first amended complaint, the proposed third amended complaint asserts § 1983 claims related to the denial of Plaintiff's constitutional rights. (Dkt. 28 at 2, 38; *see* Dkt. 12 at 5-6). The proposed amended complaint also includes a new page that makes statements referring to New York State regulations—namely, 9 NYCRR §§ 7009.4 and 7024.6. (*See* Dkt. 28 at 15).

It is not entirely clear whether Plaintiff intends these statements to assert new state law claims. Indeed, Plaintiff included a very similar reference to § 7009.4 in the first amended complaint. (Dkt. 6 at 10). In light of the Court's obligation to construe *pro se* pleadings liberally, however—and because Plaintiff has made a point to reemphasize New York state regulations in the proposed third amended complaint (Dkt. 28 at 15)—I assume that Plaintiff is moving to assert new claims under 9 NYCRR §§ 7024.6 and 7009.4.  I further find that such claims would be futile.

The state regulations that Plaintiff cites are part of the chapter of the New York Administrative Code delineating the Minimum Standards and Regulations for Management of County Jails and Penitentiaries ("Minimum Standards"). Section 7024.6 provides that "[p]risoners are entitled to observe reasonable dietary laws established by their religion" and that "[e]ach facility shall provide prisoners with food items sufficient to meet such reasonable religious dietary laws." 9 NYCRR § 7024.6. Section 7009.4 incorporates and reiterates §7024.6's requirements. *See id.* § 7009.4 ("Pursuant to the requirements of section 7024.6 of this Title, prisoners are

entitled to observe reasonable dietary laws established by their religion. Each facility shall provide prisoners with food items sufficient to meet such reasonable religious dietary laws.").

Multiple courts have concluded that the Minimum Standards do not create a private right of action. *See, e.g., Wunner v. Smith*, No. 21 CV 1865 (VB), 2022 WL 161463, at *3 n.7 (S.D.N.Y. Jan. 18, 2022) (citing *Powlowski v. Wullich*, 102 A.D.2d 575, 583(4th Dep't 1984)). Sections 7024.6 and 7009.4 are no exception. *See Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301 (KMK), 2018 WL 1626175, at *23 (S.D.N.Y. Mar. 30, 2018) (holding that §§ 7009.4 and 7024.6 "do not provide a private right of action" and dismissing plaintiff's claims under those sections). Accordingly, to the extent Plaintiff has moved to amend his complaint to assert claims under §§ 7024.6 and 7009.4, I recommend that the proposed amendment be denied as futile.

### B.    Omission of Catlin as Defendant

The proposed third amended complaint omits Catlin from both the case caption and from the list of defendants. (*Compare* Dkt. 28 at 1-4, *with* Dkt. 6 at 1-2). Nonetheless, I do not understand Plaintiff to have abandoned his claims against Catlin and I therefore construe the proposed third amended complaint as incorporating his claims against Catlin in her individual capacity here.

"[I]n lieu of summary dismissal of omitted claims or defendants, courts should review *pro se* pleadings to determine the litigant's intent." *Spinks v. Doe*, No. 24-CV-6607-CJS, 2025 WL 1530763, at *2 (W.D.N.Y. May 29, 2025) (citing *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998)). Here, while Plaintiff has omitted

- 15 -

Catlin's name from the caption and list of defendants (Dkt. 28 at 1-4), he continues to reference Catlin in other portions of the proposed third amended complaint (*id.* at 13, 25). Moreover, on October 9, 2025, about two months after moving to file a third amended complaint, Plaintiff filed a letter requesting—among other things—the Court's assistance in serving Catlin, for whom summons had been returned unexecuted. (*See* Dkt. 35 at 1).

For those reasons, I conclude that Plaintiff did not intend to remove Catlin as a defendant in this action. In light of Plaintiff's *pro se* status, I will permit Plaintiff to incorporate his First Amendment free exercise and Fourteenth Amendment conditions of confinement claims against Catlin into the third amended complaint.

### C.    **Proposed New Defendants**

#### 1.    **Monroe County**

Plaintiff also moves to amend his complaint to assert claims against Monroe County. (Dkt. 28 at 1, 3). More specifically, he asserts that Monroe County "[d]oes [n]ot reco[gn]ize [the] 'Ital' [d]iet" he requires for his Rastafarian religious practices. (*Id.* at 3, 17). The Court understands Plaintiff to be moving to amend his complaint to add a section 1983 claim against Monroe County.

The Court previously advised Plaintiff of the requirements of asserting a section 1983 claim against a municipality, which is also known as a *Monell* claim. (Dkt. 3 at 9-10). Plaintiff's original complaint brought claims against Trinity and Catlin in their official capacities. (Dkt. 1 at 2). In evaluating these claims, the First Screening Order explained:

> "[A] suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (citing, *inter alia*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The defendants in this case are alleged to be agents of Monroe County, but a local government may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

(Dkt. 3 at 9 (alteration in original)). The Court dismissed Plaintiff's official capacity claims with leave to amend and advised Plaintiff that "[i]n addition to naming Monroe County as a defendant, an amended complaint must identify the policy or custom and show how the application of that policy or custom caused the denial of his constitutional rights." (*Id.* at 10). Plaintiff did not assert a *Monell* claim in his first amended complaint, declining to name Monroe County as a defendant while naming Trinity and Catlin as defendants only in their individual capacities. (Dkt. 6 at 2; *see* Dkt. 12 at 5). However, he now seeks to pursue claims against Monroe County.

To state a § 1983 claim against a municipality, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). A plaintiff may show "an official policy or custom" in one of four ways by "alleg[ing] the existence of":

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

- 17 -

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted). "Plaintiff cannot merely allege the existence of a municipal policy or custom but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" *Torres v. Aramark Food*, No. 14-CV-7498 (KMK), 2015 WL 9077472, at *11 (S.D.N.Y. Dec. 16, 2015) (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)).  Plaintiff has failed to raise such an inference here. Indeed, he has failed to show the existence of an "official policy or custom" in any of the four ways delineated above.

First, Plaintiff's assertion that Monroe County has a policy against recognizing the Ital diet is purely conclusory.[6] *See, e.g., Santiago v. City of Rochester*, No. 14-CV-6719-FPG, 2022 WL 856780, at *2-3 (W.D.N.Y. Mar. 23, 2022) (holding that plaintiff's allegations that defendant county had various unconstitutional policies and customs, including "a policy of refusing to address detainees['] serious medical needs," were "entirely conclusory" and failed to state a *Monell* claim (quotations omitted)). And while Plaintiff asserts that he was denied a proper Ital diet, he does not allege that other prisoners were similarly denied Ital meals or any other type of religious fare. *See Baumeister v. Erie County*, No. 23-CV-1150-LJV, 2024 WL 4362311, at *7 (W.D.N.Y. Sept. 30, 2024) (finding that plaintiff "failed to state a *Monell* claim based

---

[6]    Plaintiff's conclusory assertion that Monroe County has a formal policy against Ital diets is in fact somewhat contradicted by his inclusion of Derousie's statement in one of the grievance decisions that Derousie determined that an Ital diet "is more of a guideline" than a requirement based on a "cursory internet search"—not any Monroe County policy. (*See* Dkt. 28 at 22).

on an established policy, practice, or custom" where "the only facts [he] allege[d] in support of his conclusory allegation of a policy, custom, or practice [we]re those underlying the alleged constitutional violation against him"); *cf. Torres*, 2015 WL 9077472, at *11 (holding that plaintiff had stated *Monell* claim based on allegations that defendant provided a "kosher diet menu [that] regularly and predictably provided inadequate nutrition" that "ultimately forced many if not all of the Muslim inmates who were exercising their religious beliefs to demand to be taken off the kosher diet" (original alterations and quotations omitted)).

Plaintiff also has failed to allege the existence of a municipal policy or custom based on "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question." *Brandon*, 705 F. Supp. 2d at 276. As the Second Circuit has explained, "a municipality may be liable for the acts of a single official—but only if that official is someone 'whose edicts or acts may fairly be said to represent official policy' for the entire municipality." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (quoting *Monell*, 436 U.S. at 694). "It is not enough that an official had discretion to make a decision that was unreviewable." *Id.* (citing *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003)). "Rather, the official must have been sufficiently 'high up in the municipal hierarchy,' that he was 'responsible under state law for making policy in that area of the municipality's business.'" *Id.* (first quoting *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992); and then quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)). "The authority to make policy 'necessarily' means 'the authority to make *final*

policy.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)); *see also Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 454 (S.D.N.Y. 2012) (explaining that "[t]o show *Monell* municipal liability, it is not enough that there be an individual from the municipality who implemented the allegedly unconstitutional policy" but instead, "the challenged action must have been undertaken by an authorized final policymaker" (internal quotation marks omitted)).

Plaintiff alleges that two Monroe County employees—defendants Rivers and Derousie—told him that an Ital diet is not a required part of Rastafarian religious practice, only a preference, and in Derousie's case, continually denied his grievances. (Dkt. 28 at 22, 24-25, 28, 32). But the proposed third amended complaint includes no factual allegations suggesting that either Rivers or Derousie was a final policymaker on inmates' religious diets or that their actions constituted official Monroe County policy on this issue. Indeed, the grievance decisions he included from Derousie specifically state that the decisions may be appealed to "the Superintendent." (*See* Dkt. 28 at 22, 27). And while it appears that Plaintiff appealed some grievance decisions and that those appeals were denied by "the Superintendent"—presumably Vanduzee—Plaintiff does not include any further information or context about those denials. (*See id.* at 27). In fact, it is not entirely clear from the amended complaint that they concern the failure to provide an Ital diet. (*See id.*). Further, while Plaintiff describes Rivers as "[t]he religious official for the Jail" (*id.* at 25), he provides no other information about her title or any facts suggesting that her statements about Rastafarianism are anything more than her own statements. Thus, Plaintiff has not

shown that he was subject to a policy implemented by a final municipal policymaker. *See Agosto.*, 982 F.3d at 98; *Dilworth*, 914 F. Supp. 2d at 454.

Finally, and for some of the reasons already explained, the proposed third amended complaint does not allege facts showing consistent and widespread practice of which a supervising policymaker must have been aware or a failure to train or supervise that amounts to deliberate indifference. Thus, for all those reasons, I recommend that Plaintiff's motion to amend be denied insofar as it seeks to add Monroe County as a defendant.

### 2.    <u>Baxter and Vanduzee</u>

I also recommend that Plaintiff's proposed additions of Baxter, the Monroe County Sheriff, and Vanduzee, the Monroe County Jail Superintendent, as defendants be denied as futile based on failure to allege the requisite personal involvement.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (citation omitted). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). It is not enough to assert that the defendant is a "link[] in the . . . chain

of command." *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (citation omitted).

The proposed third amended complaint fails to allege facts showing that either Baxter or Vanduzee were personally involved in denying Plaintiff a constitutionally adequate diet. In fact, the proposed third amended complaint contains little to no specific allegations about the pair. First, Plaintiff says that Baxter and Vanduzee—along with other defendants—"have refused to accom[mo]date [Plaintiff's] dietary needs." (Dkt. 28 at 13). Because Plaintiff does not elaborate on *how* Baxter and Vanduzee have so "refused," this allegation amounts to a conclusory statement, which the Court is "not required to credit." *See Hamilton v. Westchester County*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)); *see also Joseph v. Fischer*, No. 09-CV-6428L, 2009 WL 3805590, at *2 (W.D.N.Y. Nov. 6, 2009) ("Plaintiff needs to describe the events in sufficient detail to allow for a determination of defendants' personal involvement in the alleged incidents.").

Plaintiff also alleges that he "[i]nformed" Baxter and Vanduzee of the fact that he was not receiving an adequate Rastafarian diet at the Monroe County Jail. (Dkt. 28 at 25). But again, the proposed third amended complaint does not provide facts about the means Plaintiff employed to inform Baxter and Vanduzee, much less the specific content of the information he allegedly provided them. (*See id.*). In any event, it is "well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find that the defendant was personally involved

in the deprivation alleged." *Lopez v. Chappius*, No. 6:17-CV-06305 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (quoting *Rodriguez v. Rock*, No. 9:13-CV-01106 DNH, 2015 WL 5147045, at *6 (N.D.N.Y. Sept. 1, 2015)). A supervisory official's "mere receipt of communications from [a p]laintiff," that is, "is not enough." *Id.*; *see also Jordan v. Dep't of Corr.*, No. 3:24CV227 (VAB), 2024 WL 5112001, at *5 (D. Conn. Dec. 13, 2024) ("[C]ourts generally hold that correspondence from a plaintiff to a supervisory official is not sufficient to establish the official's personal involvement." (collecting cases)). So an unspecified assertion that Plaintiff informed Baxter and Vanduzee clearly does not pass muster here.

Finally, Plaintiff says that Baxter "[d]enied [his] request"—presumably for a diet more in keeping with his religion—and he seems to imply that Vanduzee, as the Superintendent, also has denied his grievances. (Dkt. 28 at 3, 24, 27). Yet once again, Plaintiff provides no details whatsoever about these denials. To the extent that the proposed third amended complaint suggests that Baxter and/or Vanduzee affirmed one or more of Derousie's denials of Plaintiff's grievances, that also is not enough. *See Lopez*, 2021 WL 859384, at *2 ("'[T]he review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement' of a supervisor in the denial of a constitutional right[.]" (quoting *Perrilla v. Fischer*, No. 13-CV-0398M, 2013 WL 5798557, at *7 (W.D.N.Y. Oct. 28, 2013))); *see also James v. Poole*, No. 06-CV-6007 MAT, 2013 WL 132492, at *7 (W.D.N.Y. Jan. 9, 2013) (finding that merely affirming the denial of plaintiff's grievance was insufficient to establish superintendent's personal involvement for purposes of § 1983).

Based on the foregoing deficiencies, I recommend that Plaintiff's motion to amend be denied insofar as it seeks to add Baxter and Vanduzee as defendants.

### 2.    Rivers and Derousie

With respect to the remaining proposed defendants, I find that the proposed third amended complaint sufficiently alleges that Rivers and Derousie were participants in the events that form the basis of Plaintiff's existing First Amendment free exercise and Fourteenth Amendment conditions of confinement claims.

The proposed third amended complaint alleges that Rivers refused to provide Plaintiff with a "[d]ietary tray" consistent with his religious beliefs and told Plaintiff that what he requested was "[n]ot [n]eeded for [his] Rastafarian faith." (Dkt. 28 at 23-25 (underlining omitted)). Plaintiff further alleges that this conduct caused him to go hungry—stuck with a choice to violate the dictates of his religion or to starve—and to suffer mental anguish. (*Id.* at 24). These allegations are generally consistent with those that the Court found sufficient in the initial Screening Order to allow Plaintiff to proceed to service on his free exercise and conditions of confinement claims. (*See* Dkt. 3 at 6, 9; Dkt. 12 at 6).

The allegations against Derousie are also sufficient at this preliminary stage. The proposed third amended complaint includes multiple grievance decisions signed by Derousie suggesting that she personally investigated—and denied—Plaintiff's religious and dietary requests. (*See, e.g.*, Dkt. 28 at 22, 28, 32). For example, in one decision, Derousie wrote, "[Plaintiff's] portion of the grievance stating he should not be served any processed foods or foods with additives is not a feasible or a reasonable

request and based on a cursory internet search regarding Rastafarian and 'Ital' diets, I determined this practice is more of a guideline in which adherence is based on the preference of the participant." (*Id.* at 22). Plaintiff therefore has plausibly alleged Derousie's personal involvement in the alleged ongoing refusal to provide food consistent with Plaintiff's religious beliefs and Plaintiff's inability to receive nutritionally appropriate amounts of food—*i.e.*, the allegations that form the basis of Plaintiff's existing claims.

Accordingly, in light of the Court's determination in the Second Screening Order that Plaintiff's free exercise and conditions of confinement claims pass muster under 28 U.S.C. §§ 1915(e) and 1915A, the lack of opposition to Plaintiff's motion to amend, and the liberal standard underlying Rules 15, 20, and 21, Plaintiff's motion to amend his complaint to add Rivers and Derousie as defendants is granted. *See Rosenfield v. N.Y. State Div. of Veterans' Affs.*, No. 1:18-CV-1299-GTS-CFH, 2020 WL 8911057, at *7 (N.D.N.Y. May 28, 2020*) (granting motion to amend insofar as it sought to add defendant, given "the requirements of Rules 15, 20, and 21 [and] defendants' lack of opposition")*; Midalgo v. Keough*, No. 05-CV-6004L, 2007 WL 1111241, at *2 (W.D.N.Y. Apr. 13, 2007) (granting motion to amend insofar as it sought to add defendants to already pending claims, given "the court's determination that the Second Amended Complaint satisfies the criteria of 28 U.S.C. §§ 1915(e) and 1915A, the lack of opposition to plaintiff's motion to amend and the presumption that leave to amend be 'freely given'" (quoting Fed. R. Civ. P. 15(a))).

## IV.    Service Issues

Last, the Court addresses Plaintiff's request for an extension of time to serve Catlin. (Dkt. 35 at 1).

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* When a plaintiff proceeds *in forma pauperis*, the Court takes on a larger role in serving defendants. *See* 28 U.S.C. § 1915(d) (providing that in cases in which the plaintiff is proceeding *in forma pauperis*, "[t]he officers of the court shall issue and serve all process"); *Jaiyeola v. Carrier Corp.*, 242 F.R.D. 190, 192 (N.D.N.Y. 2007) ("[A] plaintiff's *in forma pauperis* status 'shift[s] responsibility for serving the complaint from [the plaintiff] to the Court.'" (second and third alterations in original) (quoting *Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996))).

The Second Screening Order requested, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), that the Monroe County Attorney's Office provide Trinity's and Catlin's service addresses. (Dkt. 12 at 6). That office responded by providing Trinity's addresses but stating that, to the best of its knowledge, Catlin was a current or former Trinity employee and it had no information regarding her most recent address. (Dkt. 14). The summons issued for Catlin was addressed care of Trinity but eventually was returned unexecuted. (Dkt. 23).

In light of Plaintiff's *pro se*, *in forma pauperis* status and the difficulty ascertaining Catlin's address, the Court finds that good cause supports granting an extension of time to serve Catlin, and it therefore extends Plaintiff's time to serve Catlin until 90 days from the date of this Decision and Order and Report and Recommendation. Further, to effectuate service in this action and pursuant to *Valentin*, the Court orders that Trinity provide the Court with any information it has regarding Catlin's last known address, or in the alternative, submit a letter explaining why it is unable to do so, within 30 days of the date of this Decision and Order and Report and Recommendation.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to amend (Dkt. 28) is granted in part and I recommend that it be denied in part. Plaintiff's motion is granted to the extent it seeks to add Jennifer Rivers and Sgt. C. Derousie as defendants. I recommend that Plaintiff's motion be denied to the extent it seeks: (1) to assert a claim pursuant to 9 NYCRR §§ 7024.6 and 7009.4; and (2) to add Monroe County, Todd Baxter, and Matt Vanduzee as defendants. Accordingly, it is hereby

ORDERED that the Clerk of Court is directed to file the proposed third amended complaint (Dkt. 28) as the third amended complaint. Upon being filed, the third amended complaint will be the operative pleading in this action, to the extent consistent with the Court's resolution of Plaintiff's motion to amend; and it is further

ORDERED that Plaintiff's time to serve Blake Catlin is extended to 90 days from the date of this Decision and Order and Report and Recommendation. Trinity

shall provide the Court with any information it has regarding Catlin's last known address, or in the alternative, submit a letter explaining why it is unable to do so, within 30 days of the date of this Decision and Order and Report and Recommendation; and it is further

ORDERED that the Clerk of Court is directed to cause the United States Marshal Service to serve copies of the summons, third amended complaint, and this Decision and Order and Report and Recommendation upon defendants Blake Catlin, Sgt. C. Derousie, and Jennifer Rivers without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that, pursuant to 28 U.S.C. § 636(b)(1), this Report and Recommendation be filed with the Clerk of Court.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Federal Rule 72(b), Federal Rule 6(a) and (d), and Local Rule 72(b).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

The district judge will ordinarily refuse to consider on *de novo* review "arguments, case law and/or evidentiary material that could have been, but was not,

presented to the magistrate judge in the first instance." *See Dallio v. Hebert*, 678 F. Supp. 2d 35, 41, n.1 (N.D.N.Y. 2009); *see also Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: January 8, 2026
        Rochester, New York