UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

QUENTIN A. MAROZZI

Plaintiff,

v.

BLAKE CATLIN, *et al.*,

Defendants.

**DECISION AND ORDER**

6:24-CV-06489 EAW CDH

## INTRODUCTION

Presently before the Court are four motions for miscellaneous relief and one omnibus motion for various forms of miscellaneous relief filed by *pro se* plaintiff Quentin A. Marozzi ("Plaintiff"), an inmate currently confined at the Fishkill Correctional Facility. (*See* Dkt. 99, 103, 104, 105, 108). Per the operative complaint, (Dkt. 47 (third amended)), and as reaffirmed by the Court most recently on July 28, 2026 (*see* Dkt. 97, 98), the defendants in this action are Blake Catlin ("Catlin"), Trinity Service Group, Inc. ("Trinity"), Jennifer Rivers ("Rivers"), and Sgt. C. Derousie ("Sgt. Derousie"), (collectively "Defendants").

On July 31, 2026, Plaintiff moved for leave to take the deposition of persons confined in prison pursuant to Federal Rule of Civil Procedure 30(a)(2)(B). (Dkt. 99). On September 14, 2026, Plaintiff moved for leave to depose defendants Catlin, Trinity, Rivers, and Sgt. Derousie. (Dkt. 103). On September 21, 2026, Plaintiff

requested "addition[al] time to allow defendants to answer ad[]mission questions, [i]nterrogatories[,] provide evidence[,] and for Plaintiff . . . assisted time to depose defendants." (Dkt. 104 at 1). Plaintiff also asked the Court if he could file "a supplemental complaint on to the original complaint for new[-]found evidence [that] has been retrieved." *Id.* Defendants have not filed any responses to the aforementioned motions.

On October 13, 2026, Plaintiff filed a "motion" to request that the Court "examine and store documents sent" to Defendants. (Dkt. 105 at 1). The documents that Plaintiff submitted for Court examination and storage were Plaintiff's discovery requests—interrogatories, requests for production, and requests for admissions—for defendants Sgt. Derousie, Rivers, Catlin, and Trinity. (Dkt. 109 at 4-61, 88-106). Defendants Catlin and Trinity each filed a "response" to Plaintiff's motion, which consisted of their respective answers to Plaintiff's requests for admissions. (Dkt. 106; Dkt. 107).

On October 19, 2026, Plaintiff filed an omnibus motion seeking various forms of miscellaneous relief. (Dkt. 108). The time for filing a response has not yet expired. *See* Loc. R. Civ. P. 7(b)(2). Defendant Catlin filed a purported "response" to this omnibus motion that, in substance, contains his discovery responses to Plaintiff's interrogatories and requests for production. (Dkt. 110). Because the Court denies this motion, except to make necessary adjustments to the case management deadlines and to provide Plaintiff with certain documents, as described below, the Court has also resolved this motion herein without awaiting responses from the other defendants.

For the reasons set forth below, Plaintiff's motion for leave to depose incarcerated individuals (Dkt. 99) is denied without prejudice, and his motion for leave to depose Defendants (Dkt. 103) is denied without prejudice to the extent Plaintiff seeks to depose any Defendant by both oral "and" written examination and is otherwise denied as moot. Plaintiff's motion to supplement his complaint (Dkt. 104) is denied for failure to satisfy Federal Rules of Civil Procedure 15 and 16(b)(4), and his motion to have "assisted time" to depose Defendants (Dkt. 104) is granted to the extent of a 60-day extension to fact discovery, but is otherwise denied without prejudice. Plaintiff's motion requesting that the Court "examine and store" discovery requests he "sent" to Defendants (Dkt. 105) is denied as moot. His omnibus motion (Dkt. 108) is granted to the extent of a 60-day extension to the remaining case management deadlines and the Court's mailing of requested documents from the docket, is denied as moot in part, and is otherwise denied.

## BACKGROUND

The Court refers to its recitation of the case's factual and procedural background in its January 8, 2026 Decision and Order and Report and Recommendation on Plaintiff's motion to amend his complaint for a third time. (Dkt. 46 at 2-9, *adopted* January 30, 2026 (Dkt. 51)). The following summarizes relevant activity in the case since January 2026.

Defendants Catlin and Trinity have filed answers to Plaintiff's third amended complaint (Dkt. 50; Dkt. 61), and defendants Rivers and Sgt. Derousie filed a motion

to dismiss the same as against them (Dkt. 57). That motion to dismiss is pending before the presiding District Judge, the Hon. Elizabeth A. Wolford.

Plaintiff has filed more than 20 motions with the Court since January 2026. (Dkt. 62; Dkt. 63; Dkt. 67; Dkt. 68; Dkt. 71; Dkt. 74; Dkt. 76; Dkt. 78-82; Dkt. 86; Dkt. 91; Dkt. 92; Dkt. 99; Dkt. 100; Dkt. 103-105; Dkt. 108; Dkt. 112). These motions range from attempts to further amend the complaint, to requests for extensions of time, to requests for appointed counsel and a referral to the Pro Se Assistance Program ("PSAP") for Prisoners, to various discovery related requests. The undersigned amended the operative Scheduling Order three times thus far in 2026—twice after holding a conference with Plaintiff and counsel for Trinity and Catlin, and once after granting a motion to extend deadlines filed by Trinity. (Dkt. 52; Dkt. 53; Dkt. 83; Dkt. 85; Dkt. 95; Dkt. 96). On May 18, 2026, the undersigned granted Plaintiff a referral to PSAP for Prisoners for "assistance with serving and responding to discovery" (Dkt. 83-84; *see* Dkt. 44), and Plaintiff advised the Court that he has been able to consult with and receive guidance from PSAP for Prisoners since June 25, 2026 (Dkt. 95).

Plaintiff has one motion pending before Chief Judge Wolford—his August 3, 2026 "motion for summary judgment." (Dkt. 100). In total, six of Plaintiff's recent motions are pending, and the Court now turns to the five that it will resolve in this Decision and Order.

## DISCUSSION

### I. Request for Leave to Supplement the Operative Complaint (Dkt. 104)

Pursuant to the Court's original Scheduling Order, the deadline to join other parties and amend the pleadings in this matter was August 22, 2025. (Dkt. 26 at 2). Plaintiff filed a motion to amend his complaint on August 14, 2025, before the deadline expired (Dkt. 28), which was ultimately granted in part and denied in part (Dkt. 46; Dkt. 51). No party sought to extend the deadline for filing motions to join parties or amend pleadings prior to its expiration. Plaintiff's pending request for leave to file a "Supplemental Complaint" was filed on September 21, 2026. (Dkt. 104).

#### A. Legal Standard

Two provisions of the Federal Rules of Civil Procedure guide a court's analysis of a motion for leave to amend where the deadline for such motions, as set forth in a scheduling order, has passed. *Thomas v. ConAgra Foods, Inc.*, No. 6:20-CV-06239-EAW-MJP, 2022 WL 3699408, at *3 (W.D.N.Y. Aug. 26, 2022). The first is Rule 15(a)(2), which provides that once the time to amend as of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The second is Rule 16(b)(4), which provides that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "'Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order

shall not be modified except upon a showing of good cause.'" *Thomas*, 2022 WL 3699408, at *3 (alteration omitted and quoting *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009)). In *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007), the Second Circuit issued guidance as to the balance between Rule 15(a)(2) and Rule 16(b)(4):

> [T]he primary consideration is whether the moving party can demonstrate diligence. It is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants.

*Id.* at 243.

"Courts in this District have concluded that *Kassner* does not excuse the moving party from having to demonstrate diligence in order to show 'good cause.'" *Thomas*, 2022 WL 3699408, at *3 (quotation omitted). "When considering an untimely motion for leave to amend, district courts throughout the Second Circuit have held that, the standards of Rule 16(b) must be met first and cannot be short-circuited by an appeal to those of Rule 15(a)." *Id.* (alteration and quotation omitted) (collecting cases).

If good cause has been shown to consider an untimely motion to amend, under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), a standard that the Second Circuit has characterized as "liberal," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). That is, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his

claim on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

But "freely" not does not mean always. Notwithstanding Rule 15's liberal standard, "a district court may 'deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 334 (S.D.N.Y. 2019) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). A motion to amend is futile when "as a matter of law," the "proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)," even when the court "accept[s] as true all non-conclusory factual allegations . . . and draw[s] all reasonable inferences in plaintiff's favor." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Ultimately, "[t]he decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion." *Wood v. Mike Bloomberg 2020, Inc.*, 343 F.R.D. 470, 473 (S.D.N.Y. 2023) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330 (1971)).

**B. <u>Scope of Magistrate Judge Authority</u>**

As discussed in the Court's January 2026 Decision and Order and Report and Recommendation (Dkt. 46 at 12-13), there is conflicting guidance from the Second Circuit regarding whether a motion to amend a complaint is dispositive, and therefore within a magistrate judge's authority to decide under 28 U.S.C. § 636(b)(1)(A). *Compare Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (stating in dicta that "a district judge may refer nondispositive motions, such as a motion to amend the

complaint, to a magistrate judge for decision without the parties' consent"), *with Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 25 (2d Cir. 2012) (stating that magistrate judge's decision granting a plaintiff's motion to amend on condition that amended complaint could not contain any state law claims "not only denied plaintiff leave to plead new claims, but effectively dismissed [plaintiff]'s existing state-law claims, which had survived the defendant's motion to dismiss" and thus "amounted to a ruling on a dispositive matter").

"In recent years, many district and magistrate judges within [this] Circuit have come to the conclusion that a motion to amend is not a dispositive motion, regardless of the grounds on which it is decided." *Reed v. City of New York*, No. 20-CV-8352 (MMG), 2024 WL 3674852, at *1 n.1 (S.D.N.Y. Aug. 5, 2024) (quotation omitted). "Other courts within the Second Circuit make a distinction between denials based on undue delay or prejudice, which are viewed as non-dispositive, and denials based on futility, which are viewed as akin to the grant of a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6) and therefore dispositive." *Adams v. Bloomberg L.P.*, No. 20-CV-7724 (RA) (JLC), 2024 WL 3269274, at *1 n.1 (S.D.N.Y. July 2, 2024).

As another magistrate judge in this District has observed, "[a]t most, it seems that motions to amend are dispositive only when the magistrate judge denies based on futility." *Getman v. Vondracek*, 731 F. Supp. 3d 524, 528 (W.D.N.Y. 2024). Here, the Court's decision on Plaintiff's additional attempt to supplement his complaint is

based on untimeliness and failure to satisfy Federal Rules of Civil Procedure 15 and 16(b). Therefore, resolution through a Decision and Order is appropriate.

### C. Leave to Supplement is Denied

On September 21, 2026, Plaintiff filed a motion seeking, *inter alia*, leave to file "a supplemental complaint on to the original complaint for new[-]found evidence has been retrieved." (Dkt. 104 at 1 (capitalization omitted)). In the same paragraph, Plaintiff continues that he "never received a response from Spencer Ash representing Jennifer Rivers and Sgt. Derousie but did receive a response from Trinity and Blake Catlin that did not consent to it." (*Id.* (capitalization omitted)). The Court understands Plaintiff to be stating that defendants Catlin and Trinity do not consent to the filing of a supplemental complaint and that defendants Sgt. Derouise and Rivers have not responded with a position either way. As noted, no defendant filed a response on the docket to Plaintiff's September 21, 2026 motion.

Plaintiff has not sought nor received an extension of time to amend his complaint since the Court's August 2025 deadline for doing so expired. (*See* Dkt. 26). However, the nature of his request to supplement his complaint would necessarily require a modification to the Court's operative Scheduling Order to grant. Plaintiff has made no argument to demonstrate "good cause" to modify a scheduling order as required by Federal Rule of Civil Procedure 16(b). *See* Fed. R. Civ. P. 16(b)(4); *Arriola v. 658-660 Amsterdam Corp.*, No. 20-CV-1962 (VSB), 2025 WL 239110, at *2 (S.D.N.Y. Jan. 16, 2025) (holding that requests to extend expired scheduling order deadlines are governed by Rule 16(b)'s good cause standard); *Pal v. Cipolla*, No. 3:18-

CV-00616 (MPS), 2020 WL 564230, at *3 (D. Conn. Feb. 5, 2020) (same); *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 WL 4711961, at *4 (W.D.N.Y. Sept. 29, 2011) (same); *see also Powercap Partners LLC v. Fleischmann*, No. 20-CV3428-RRM-RML, 2023 WL 2711316, at *3 (E.D.N.Y. Mar. 30, 2023) (explaining that although Rules 6(b) and 16(b) both permit extensions of time for good cause, the standard for showing good cause under Rule 16(b) is "more rigorous" than under Rule 6(b)).

The Court notes that Chief Judge Wolford recently flagged the same issues for Plaintiff on July 28, 2026, when she rejected Plaintiff's attempt to file a "Supplemental Complaint." (*See* Dkt. 98 ("In this case, the Court's Scheduling Order required all motions to join other parties or to amend the pleadings to be filed by August 22, 2025. . . . Plaintiff has not sought or received an extension of this deadline nor has he offered any explanation for seeking to add numerous additional parties 11 months after the deadline set by the Court.")).

Plaintiff also has not acknowledged the expired deadline in his pending request for leave to supplement his third amended complaint and again has made no argument as to "good cause" with respect to any of his purported amendments. Plaintiff's motion to file a supplemental complaint does not describe what evidence has been newly found, why there was a such delay in retrieving this evidence and why it could not have been found sooner, nor does it otherwise make any assertions from which the Court could find good cause to modify the operative Scheduling Order's expired deadline for joining parties and amending pleadings. *See* Fed. R. Civ.

P. 16(b)(4). There is no basis on which the Court could find that extending the deadline to file amended pleadings, which has long passed, is warranted. *See id*. Accordingly, the Court finds that Plaintiff's motion for leave to file a supplemental complaint must be denied. *See id.*; *Thomas*, 2022 WL 3699408, at *3.

Even if good cause to modify the Scheduling Order had been shown, denial of Plaintiff's motion is also warranted because Plaintiff's filing does not comply with the applicable Federal and Local Rules of Civil Procedure. *See* Loc. R. Civ. P. 15(a) ("A movant seeking to amend or supplement a pleading . . . must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion. The proposed amended pleading must be a complete pleading superseding the original pleading in all respects. No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference."); *see also* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event."). The Court notes that Chief Judge Wolford called Plaintiff's attention to Local Rule 15 governing amendments to pleadings in her July 28, 2026 Order, when she struck from the docket a "Supplemental Complaint" that was filed by Plaintiff without an accompanying motion, a "complete proposed amended pleading," or any argument to satisfy the relevant standards to amend. (Dkt. 98). Plaintiff has also made several previous attempts to amend his complaint and has had ample opportunity to familiarize himself with the applicable Federal and Local Rules. (*E.g.*, Dkt. 3-7; Dkt. 12; Dkt. 28; Dkt. 51).

Plaintiff's bare-bones request to file a supplemental complaint due to undescribed new-found evidence, made over a year after the deadline to join parties and amend pleadings has expired, is denied. *See* Fed. R. Civ. P. 15, 16(b).

## II. Fact Discovery Matters

Plaintiff filed purported interrogatories and requests for production on May 11, 2026. (Dkt. 76; Dkt. 77); *see* Loc. R. Civ. P. 5.2(f)(1) ("Notwithstanding the provisions of Fed. R. Civ. P. 5(d)(1), all discovery materials in cases with incarcerated *pro se* litigants shall be filed with the Court."). Within the next week, Plaintiff filed five motions, one of which was a request for a referral to PSAP for Prisoners. (Dkt. 78-82). The Court held a status conference on May 18, 2026, with Plaintiff and counsel for defendants Catlin and Trinty at which the Court granted Plaintiff's request for a referral to PSAP for Prisoners, denied several of his motions without prejudice, discussed changes to the operative scheduling order, and noted that "[i]f the discovery issues persist after consulting an attorney, Plaintiff may send a letter requesting a discovery conference." (Dkt. 83; *see* Dkt. 84-85).

Less than two months later, on July 9, 2026, and after Plaintiff had filed three additional motions and defendants Rivers and Sgt. Derousie had filed their Rule 26 disclosures (Dkt. 86; Dkt. 91-93), the Court held a status conference with the parties at which Plaintiff and counsel for defendants Catlin and Trinity appeared. (Dkt. 95). At the July 9, 2026 conference, Plaintiff "confirm[ed] that he was able meet with the attorneys at PSAP on 6/25/2026. Plaintiff advise[d] that he [was] in the process of mailing out new discovery demands based on the guidance he obtained." (*Id.*; *see* Dkt.

84 (referring Plaintiff to PSAP for Prisoner for "assistance with serving and responding to discovery demands")). "The parties agree[d] that the new discovery demands w[ould] be the operative demands," and the Court directed Defendants to "respond in accordance with the Federal Rules of Civil Procedure." (Dkt. 95). The Court also discussed with the parties the need for an amended scheduling order and extended the remaining deadlines by 60 days. (*Id.*). The Court issued an Amended Scheduling Order the next day memorializing the 60-day extension of the remaining deadlines, including the extension of fact discovery until October 20, 2026. (Dkt. 96). This was the operative Scheduling Order when Plaintiff filed each of the five pending motions the Court is presently addressing. (*See* Dkt. 99; Dkt. 103-105; Dkt. 108).

Despite having communicated to the Court on July 9, 2026, that he was in the process of mailing out new discovery demands based on the guidance he received, and having agreed that such forthcoming discovery demands would be the "operative demands" (Dkt. 95), the next record of Plaintiff purporting to serve any discovery on Defendants is from October 13, 2026 (Plaintiff's "Operative Discovery Requests"). (Dkt. 109 (containing requests for production, interrogatories, and requests for admissions on defendants Sgt. Derousie, Rivers, Catlin, and Trinity)). The Court notes that, although the Clerk of Court did not receive Plaintiff's filing until October 13, Plaintiff dated the various discovery requests September 12, 13, or 14, 2026. (*E.g.*, Dkt. 109 at 3, 14, 25, 36, 45, 62, 106). Plaintiff also claimed in a filing dated October 22, 2026, to have sent his discovery requests on September 16, 2026 (*see* Dkt. 112 at 1), but that filing was unaccompanied by any evidence substantiating that assertion.

Under the Federal Rules of Civil Procedure, Defendants have 30 days from service of interrogatories to respond thereto, Fed. R. Civ. P. 33(b)(2), 30 days from service of requests for production to respond thereto, Fed. R. Civ. P. 34(b)(2)(1), and 30 days from service of requests for admission to respond thereto otherwise the matter(s) will be deemed admitted, Fed. R. Civ. P. 36(a)(3). Plaintiff's Operative Discovery Requests do not contain a certificate of service for any defendant. (*See* Dkt. 105; Dkt. 109). Defendants Catlin and Trinity each filed a "response" on October 15, 2026, to Plaintiff's "motion," which consisted of their respective answers to Plaintiff's requests for admissions. (Dkt. 106; Dkt. 107). Defendant Catlin also filed what is, in substance, his responses to Plaintiff's operative interrogatories and requests for production. (Dkt. 110).

**A. Requests to Extend Fact Discovery (Dkt. 104; Dkt. 108 at 4)**

Also on September 14, 2026, Plaintiff dated a request for "addition[al] time to allow defendants to answer ad[]mission questions, interrogatories[, and] provide evidence." (Dkt. 104 at 1). Plaintiff noted in that motion that he is asking for additional time because there was a delay in having PSAP for Prisoners review his case. (*Id*. (attaching Dkt. 104 at 2 (September 10, 2026 letter from the University of Buffalo School of Law Clinical Legal Education Program (the "Clinic"), noting that Plaintiff was mailed an incorrect form for limited scope legal services, that the correct form was overnighted to him, and "[a]s soon as [the Clinic] receive[s] it from [Plaintiff], [it] will move forward with reviewing [his] matter."))). This motion was

received by the Clerk of Court on September 21, 2026. (*Id.*). On October 19, 2026,[1] Plaintiff also requested, *inter alia*, that the Court "[g]rant Defendants more time if they ask to finish handing over evidence, interrogatories, and ad[]missions questions." (Dkt. 108 at 4 (capitalization and emphasis omitted)).

The Court interprets these requests as motions to extend fact discovery in this case—the current deadline having expired on October 20, 2026, pursuant to the Court's July 10, 2026 Amended Scheduling Order (Dkt. 96 at 1)—and grants such requests to the extent of a 60-day extension of fact discovery and other remaining deadlines. An amended scheduling order will follow.

Federal Rule of Civil Procedure 16(b)(4) provides that a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). "[T]here is no strict prerequisite to a showing of 'good cause'—the relative importance of various '[f]actors differ[s] based upon the posture of the case and the particular type of relief sought.'" *Al Thani v. Hanke*, No. 20 CIV. 4765 (JPC), 2025 WL 3204231, at *9 (S.D.N.Y. Nov. 17, 2025) (quoting *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019)). An "overarching principle is that Rule 16(b)(4), like all rules of civil procedure, 'should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1). In "undertaking the good cause inquiry, [a court should] give[ ] solicitude to [a plaintiff's]

[1] This omnibus motion was dated October 10, 2026, by Plaintiff. (Dkt. 108 at 7).

status as a *pro se* litigant." *Tatintsian v. Vorotyntsev*, No. 16 Civ. 7203 (GHW), 2021 WL 780139, at *5 (S.D.N.Y. Jan. 27, 2021) (cleaned up). That said, "[a]lthough the Court must show liberality to Plaintiff because of his *pro se* status, he is still required to comply with the Federal Rules of Civil Procedure." *Smith v. Dodge*, No. 9:18-CV-1066 (MAD/CBF), 2026 WL 1256291, at *15 (N.D.N.Y. May 7, 2026), *reconsideration denied*, 2026 WL 1601778 (N.D.N.Y. June 4, 2026).

The Court finds good cause to warrant an extension of fact discovery, as well as the remaining deadlines in the July 10, 2026 Amended Scheduling Order (Dkt. 96), by 60 days.

At the time Plaintiff made his requests for additional time to allow Defendants to respond, fact discovery had not yet closed, and his requests for additional time appear to correspond with the mailing of his Operative Discovery Requests. Plaintiff had previously sought assistance with conducting discovery and did affirm to the Court on July 9, 2026, that he had already received guidance from PSAP for Prisoners regarding preparing and serving discovery and that he was in the process of mailing out discovery requests consistent with that guidance. (Dkt. 44; Dkt. 84; Dkt. 95). Although the Court notes that Plaintiff's Operative Discovery Requests, dated mid-September 2026 and not received by the Court until October 13, 2026, occurred more than two months after Plaintiff communicated to the Court that he was "in the process of serving" discovery requests, the September 10, 2026 letter from the Clinic indicates there was as least some confusion or delay with the assistance Plaintiff was receiving and for which this Court ordered a referral regarding discovery. (*See* Dkt.

104 at 2). The Court is also cognizant of the general delays involved in needing to mail all correspondence and filings, especially while incarcerated. Under these circumstances, the Court finds that Plaintiff was sufficiently diligent to warrant a 60-day extension.

The Court also finds that a 60-day extension of fact discovery and the other remaining deadlines presents minimal if any prejudice to Defendants where Defendants have not opposed any of Plaintiff's motions filed since July 2026, Defendants were apparently served with discovery requests prior to the close of fact discovery, and such requests were Plaintiff's Operative Discovery Requests as Trinity and Catlin previously agreed. *See, e.g., Al Thani*, 2025 WL 3204231, at *9-10 (finding good cause under Rule 16(b)(4) to reopen discovery on *pro se* parties' request for the limited purpose of deposing five individuals where the two party-deponents were "not likely to be unduly prejudiced," which would (1) require the defendants to expend significant additional resources to conduct discovery, or would (2) significantly delay the resolution of the dispute, and where there was a reasonable possibility that reopening discovery "will uncover relevant evidence" (quotation omitted)). Very minimal discovery has taken place in this case and Plaintiff has had guidance, albeit potentially delayed, from PSAP for Prisoners in preparing his discovery requests. Under the circumstances presented, there is a reasonable possibility that extending the fact discovery and attending deadlines will uncover relevant information. *See id.*; *see also, e.g., United States v. Veeraswamy*, 765 F. Supp. 3d 168, 191 (E.D.N.Y. 2025) (applying the Second Circuit's "oft-stated preference for resolving disputes on the

merits”). Furthermore, a 60-day extension will cover any potential imprecision or confusion regarding when Defendants were served with Plaintiffs Operative Discovery Requests, assuming without deciding that Defendants were in fact served appropriately.

**B. Additional Motions Related to Written Fact Discovery**

**1. Request to Examine and Record Discovery (Dkt. 105)**

As discussed, on October 13, 2026, the Court received copies of Plaintiff’s Operative Discovery Requests, which Plaintiff styled as a “motion” requesting that the Court “examine and store documents sent to all parties (Defendants) just in case they say they never received [them] or say[] something was not attached. I also would like [the] Court to see all questions asked to [D]efendants.” (Dkt. 105 at 1 (capitalization omitted)). This “motion” is denied as moot.

Local Rule of Civil Procedure 5.2(f)(1) states that “[n]otwithstanding the provisions of Fed. R. Civ. P. 5.2(d)(1), all discovery materials in cases with incarcerated *pro se* litigants shall be filed with the Court.” This expressly includes but is not limited to requests for production, interrogatories, and requests for admissions. Fed. R. Civ. P. 5.2(f)(1)(D), (E), (G). Accordingly, Plaintiff was required to file his Operative Discovery Requests with the Court, and there is no need for an accompanying “motion” asking the Court to store and examine filings appropriately submitted.

All parties must comply with Local Rule 5.2(f) and all other Local and Federal Rules of Civil Procedure. The Clerk of Court has restricted public access to the filed

discovery materials in this case in accordance with Local Rule 5.2(f)(3) and current Court practices regarding sealing documents. The parties are directed to note in future filings of discovery materials that they are "discovery materials" as defined by Local Rule of Civil Procedure 5.2(f)(1) and that such documents should be appropriately restricted pursuant to Local Rule of Civil Procedure 5.2(f)(3). The parties are also directed to supplement the record with any discovery materials that have not yet been filed.

**2. <u>Request to "Subpoena" Defendants to Respond to Discovery (Dkt. 108 at 5)</u>**

On October 19, 2026, Plaintiff requested that the Court "grant a subpoena of the Defendants to respond to discovery of evidence, ad[]mission questions[,] and interrogatories," and stated, "I have sent an affidavit form to comply and no answer. I have asked if they needed more time and no answer. I have exhausted all my resources." (Dkt. 108 at 5 (capitalization omitted)). This motion is denied.

As Plaintiff is requesting Court intervention to facilitate discovery responses from the named defendants in this action, the Court construes Plaintiff request as a motion to compel rather than a request for "subpoenas"—the latter of which are appropriate for use in seeking discoverable materials from non-parties to a lawsuit. *See* Fed. R. Civ. P. 45; *U.S. Bank Nat'l Ass'n as Tr. for CSMC Mortg.-Backed Pass-Through Certificates, Series 2006-3 v. Dernier*, No. 2:16-CV-230, 2024 WL 7014332, at *1 (D. Vt. May 2, 2024), *motion for relief from judgment denied*, 2024 WL 7014331 (D. Vt. Sept. 18, 2024) ("Under Rule 45, a party may subpoena a non-party to give testimony at deposition or trial, or provide documents subject to the requirements

provided by the rule." (citing Fed. R. Civ. P. 45(a)(1)); *Cowart v. Abdel-Razzaq*, No. 08-CV-554F, 2010 WL 1533381, at *6 (W.D.N.Y. Apr. 15, 2010) (a request to "answer interrogatories attached to a subpoena is beyond the scope of Rule 45, as Rule 45 does not permit this form of discovery."); *Lehman v. Kornbleu*, 206 F.R.D. 345, 346 (E.D.N.Y. 2001) (denying request to serve subpoenas seeking information by interrogatories). The Court notes that it discussed this issue with Plaintiff directly during the May 18, 2026 status conference, having flagged that Plaintiff was then as well seeking "subpoenas" for the defendants in this action. (*See* Dkt. 83).

When Plaintiff filed his motion in mid-October, the deadline for submitting motions to compel had already expired—on August 24, 2026.[2] (Dkt. 96 at 1). Plaintiff has not attempted to set forth any good cause acknowledging the lapsed deadline under Federal Rule of Civil Procedure 16(b)(4). (Dkt. 108 at 5).

Additionally, Plaintiff has not established any basis to compel discovery responses from Defendants at this stage and has not followed the prescribed procedure for seeking assistance from the Court with a discovery dispute. The Court affirmed on July 9, 2026, that Defendants must respond to Plaintiff's anticipated

---

[2] After holding an initial scheduling conference on July 23, 2025, with Plaintiff and counsel for Trinity (the only defendant at the time who had been served), the Court issued a Scheduling Order setting the deadline for motions to compel discovery approximately a month before the close of fact discovery. (Dkt. 26 at 1). Since then, after discussions with the parties and consideration of motions to extend case management deadlines, the deadline for motions to compel has consistently been reset to predate the close of fact discovery by approximately one to three months. (*See* Dkt. 45 at 1; Dkt. 58 at1; Dkt. 85 at 1; Dkt. 96 at 1). Having heard no contrary request from the parties from those prior Orders, the Court's accompanying Amended Scheduling Order will follow suit.

discovery requests in accordance with the Federal Rules of Civil Procedure (Dkt. 95), which set a default time to respond to interrogatories, requests for production, and requests for admissions as 30 days *from the date of service*, Fed. R. Civ. P. 33(b)(2), 34(b)(2)(1), 36(a)(3). As mentioned above, Plaintiff's Operative Discovery Requests do not contain a certificate of service for any defendant, and the date of service could be no earlier than September 14, 2026—the most recent date Plaintiff affixed to his collective submission before mailing it to the Court. (*See* Dkt. 105; Dkt. 109). The Court did not receive Plaintiff's mailing of his Operative Discovery Requests until October 13, 2026. (Dkt. 105; Dkt. 109; *cf., e.g.*, Dkt. 104 (dated September 14, 2026, and received by the Clerk of Court one week later, on September 21, 2026); Dkt. 108 (dated October 10, 2026, and received by the Clerk of Court nine days later, on October 19, 2026)). As such, even if Plaintiff had followed the proper procedure for handling discovery disputes, which he has not done, it is at least arguable that Defendants' standard time frames under the Federal Rules to respond to Plaintiff's Operative Discovery Requests have not yet expired.

To reemphasize the proper procedure should Plaintiff, or another party, seek to raise a discovery dispute with the Court, pursuant to the undersigned's individual practices:

> If a discovery dispute arises, the parties shall initially advise the Court of the dispute via letter (not to exceed four single-spaced pages), with copies to all counsel and self-represented parties. All letters should be sent by mail, email to holland@nywd.uscourts.gov, facsimile or hand delivery. Upon review of the letter, Judge Holland will generally schedule a conference with the parties to attempt to settle the dispute informally. If the dispute is not resolved informally, the parties will have the opportunity to file a formal

> motion. This informal discovery dispute process is not expedited motion practice. Therefore, letter submissions should provide a brief overview of the issue with supporting documentation and the parties' positions. Parties do not waive arguments by failing to raise them in their letter submissions.

Hon. Colleen D. Holland "Discovery Disputes," United States District Court for the Western District of New York, *available online at* https://www.nywd.uscourts.gov/content/hon-colleen-d-holland (last visited October 25, 2026).

These required practices were discussed with Plaintiff and appearing Defendants during prior discovery conferences, including the status conference held on May 18, 2026, during which the Court denied prior motions to compel by Plaintiff and explained that "[i]f the discovery issues persist after consulting an attorney, Plaintiff may send a letter requesting a discovery conference." (Dkt. 83). The Court also, *inter alia*, previously denied a motion to compel filed by Trinity for failure to comply with the undersigned's individual practices. (*See* Dkt. 40). All of the Court's Orders are mailed to Plaintiff as a matter of course, and a subsequent discovery conference was held, with Plaintiff attending, after Trinity filed the prerequisite letter detailing the discovery dispute. (*See* Dkt. 41-43).

In short, Plaintiff has been made well-aware of the process by which discovery disputes must be raised, and filing a series of unsupported and premature motions, particularly at this stage of the case, is plainly improper. Plaintiff's motion to compel discovery (Dkt. 108 at 5) is denied without prejudice.

### 3. Request for Sanctions Against Defendants Rivers and Sgt. Derousie (Dkt. 108 at 3)

Also on October 19, 2026, Plaintiff moved for the Court to "take in consideration that defendants Jennifer Rivers['] and Sgt. Derousie['s] representation has (1) not show[n] up to Court twice with no notice or explanation; (2) never opposed class action or pr[e]liminary injunction; [and] still has not responded to discovery request[s]. The Plaintiff ask[s] the Court [to] place sanctions on Defendant[s] for not being available to Court for discovery purpose[s] and fees for all other representing parties be paid by the Defendants with also a summary judgment motion prior filed to be granted for Plaintiff." (Dkt. 108 at 3 (capitalization omitted)). This motion is denied without prejudice.

As discussed above, Plaintiff did not follow the proper procedure for raising a discovery dispute. The Court also disagrees with Plaintiff's characterization of the record. For example, on July 9, 2026, counsel for defendants Rivers and Sgt. Derouise filed a letter providing an explanation for his inadvertent absence from the July 9, 2026 status conference. (Dkt. 94). Plaintiff has also not provided a certificate of service demonstrating that his Operative Discovery Requests were served on defendants Rivers and Sgt. Derousie at all nor has he substantiated why he deems these defendants to be delinquent in their responses. No defendant has been required to "oppose[] [a] class action" where Plaintiff had merely requested leave to file the same, a motion which Chief Judge Wolford denied.. (*See* Dkt. 111).

In sum, Plaintiff has not established a basis for any sanctions against defendants Rivers or Sgt. Derousie. Should Plaintiff wish to seek sanctions against

or to compel any defendant to respond to discovery, he must follow the undersigned's individual practices, which have been explained to him previously and again in this Decision and Order.

## III. Requests Regarding Depositions

No record of depositions taken by Plaintiff have been filed in this case. *Cf.* Loc. R. Civ. P. 5.2(f)(1)(C) ("discovery materials" that must be filed with the Court in cases with incarcerated *pro se* litigants include "notices of deposition by oral and written examination and transcripts of said examinations as set forth in Fed. R. Civ. P. 30-31).[3] As an accompanying Amending Scheduling Order will memorialize, the Court has extended fact discovery by 60 days—to December 21, 2026. Various recent motions filed by Plaintiff before the expiration of the now-amended fact discovery deadline implicate requests pertaining to his anticipated depositions.

### A. Legal Standard

Federal Rule of Civil Procedure 30 governs depositions by oral examination, and Federal Rule of Civil Procedure 31 governs depositions by written examination.[4] Under both rules, a party need not seek leave of court to depose another party to the

---

[3] Although the record captures at least an attempt by Trinity to depose Plaintiff (*see, e.g.*, Dkt. 49 at 3), the Court notes that no defendant has filed a notice of deposition or a transcript of a deposition conducted in accordance with Local Rule of Civil Procedure 5.2(f)(1)(C).

[4] The Court is highlighting certain parts of Federal Rules of Civil Procedure 30 and 31 to facilitate a decision on Plaintiff's remaining motions. However, Plaintiff (and Defendants) should by no means construe this recitation as the complete universe of applicable rules and law that govern pursuing depositions in support of the case.

case unless (1) the parties have not stipulated to the deposition and (a) the deposition would result in more than 10 total depositions being taken across Rules 30 and 31, (b) the deponent has already been deposed in the case, or (c) the party is seeking to take the deposition before the time specified in Rule 26(d); or unless (2) the deponent is confined in prison. Fed. R. Civ. P. 30(a)(2), 31(a)(2).

Regardless of whether a deposition is conducted orally or by written examination, the party who seeks to depose a person or entity is responsible for sufficiently noticing the deposition on every other party to the case. Fed. R. Civ. P. 30(b)(1), 31(a)(3). Furthermore, the noticing party is responsible for the costs of recording the deposition. Fed. R. Civ. P. 30(b)(3); *see* Fed. R. Civ. P. 30(c)(1), 31(b).

### B. Request to Depose Defendants (Dkt. 103)

On September 14, 2026, Plaintiff filed a motion to "[g]rant Plaintiff [leave] to [pursue] notice of petition for order to take depositions to perpetuate testimony of defendants." (Dkt. 103 at 1 (capitalization omitted)). Plaintiff requests to "take oral and written depositions of Defendants." (*Id.*). Plaintiff has not taken the deposition of any party or witness, the period specified by Rule 26(d) has passed, and he is seeking to depose named defendants in this action, none of whom are incarcerated. Therefore, leave of Court is not required to depose defendant Trinity, Catlin, Rivers, and Sgt. Derousie. *See* Fed. R. Civ. P. 30(a)(2), 31(a)(2). Plaintiff also does not need leave of Court to choose between conducting any defendant's deposition orally or by written examination.

However, to the extent that Plaintiff seeks to conduct two depositions of any single defendant, one orally "and" one by written examination, Plaintiff has not set forth any justification to sustain such a request. The Court notes that, should Plaintiff later want to take a second deposition of any defendant, he would need to seek leave of Court before doing so if that defendant does not stipulate to a second deposition, and Plaintiff would need to set forth a sufficient basis to justify such a request. *See* Fed. R. Civ. P. 30(a)(2), 31(a)(2) (leave of court is required where the parties have not stipulated to the deposition and the deponent has already been deposed in the case).

Accordingly, Plaintiff's request for leave to depose named defendants in this action is denied as moot. To the extent that Plaintiff seeks to depose any particular defendant(s) both orally and by written examination, that request is denied without prejudice. Should Plaintiff elect to conduct depositions of any named defendant by written questions instead of orally, or orally instead of by written questions, he may do so without leave of Court.

### C. <u>Request for Leave to Depose Confined Persons (Dkt. 99; Dkt. 108 at 2)</u>

On July 31, 2026, Plaintiff moved for leave to take the deposition, by video or telephone, of five persons confined in prison pursuant to Rule 30(a)(2)(B). (Dkt. 99). Plaintiff seeks to orally depose Louis Serrano, Nicholas B. Stumpf, Jeffery Tondryk, Nathan Harvey, and Gerald Smith, all of whom are incarcerated,[5] "on the grounds

[5] According to Plaintiff's motion, Louis Serrano is incarcerated at Mid-State Correctional Facility, Nicholas B. Stumpf is incarcerated at Groveland Correctional Facility, Jeffery Tondryk is incarcerated at Five Points Correctional Facility, Nathan Harvey is incarcerated at a "federal prison in Maryland," and Gerald Smith is

that [each] witness . . . has knowledge of particular facts" relevant to Plaintiff's First and Eighth Amendment claims. (Dkt. 99 at 1, 3, 5, 7, 9). On October 19, 2026, Plaintiff filed a motion for leave to depose witnesses "that [were] previously filed in a motion to the court[], with the evidence of affidavit from the wit[]ness signed and dated from wit[]ness, with also a notary signature. One of the wit[]nesses Louris Serrano being a Rastafarian and rights also violated." (Dkt. 108 at 2 (capitalization omitted)).

As discussed, under Federal Rule of Civil Procedure 30(a)(2)(B), when a party seeks to conduct oral depositions, "[the] party must obtain leave of court . . . if the deponent is confined in prison." Fed. R. Civ. P. 30(a)(2)(B). "'Rule 30(a)(2) instructs that this leave shall be granted to the extent consistent with the principles stated in Rule 26(b)[(1) and] (2).'" *Moorer v. McCann*, No. 6:23-CV-06040 FPG CDH, 2025 WL 833129, at *1–2 (W.D.N.Y. Feb. 24, 2025) (quoting *Braham v. Lantz*, No. 3:08-CV-1564 DFM, 2011 WL 4809032, at *1 (D. Conn. Oct. 11, 2011)). "Rule 26(b)(1) provides that parties generally 'may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,' taking into account certain enumerated considerations." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "'Rule 26(b)(2) vests the Court with 'broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.'" *Id.* (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998)).

incarcerated at Elmira Correctional Facility. (Dkt. 99 at 1, 3, 5, 7, 9). Plaintiff is incarcerated at Fishkill Correctional Facility. (Dkt. 37).

"In determining whether to limit the extent of discovery, the court weighs the probative value of proposed discovery against its potential burden." *Braham*, 2011 WL 4809032, at *1 (citing Fed. R. Civ. P. 26(b)(2)(C)). Specifically, Rule 26(b)(2)(C) provides that the court "must limit" discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

"'[T]he three provisions of [Rule 26(b)(2)] should not be treated as separate and discrete grounds to limit discovery so much as indicia of proper use of discovery mechanisms; they do not call for [the parties] to undertake [a] complex analysis . . . . Instead, the court is called upon to consider the specific facts of the case to make a [commonsense] decision about whether or not the discovery in question goes too far.'" *Braham*, 2011 WL 4809032, at *1 (quoting *Dongguk University v. Yale University* 270 F.R.D. 70, 73 (D. Conn. 2010.)).

Plaintiff's July 1, 2026 motion to depose incarcerated persons (Dkt. 99) is denied without prejudice, and Plaintiff's October 19, 2026 motion reiterating the same request (Dkt. 108 at 2) is denied as moot. On the current record, the court is unable to sufficiently engage in Rule 26(b)(2)(C)'s balancing test. Plaintiff represents

in his motion papers that each of the five inmates whom he seeks to depose has "knowledge of particular facts" to support his First and Eighth Amendment claims regarding conduct that Plaintiff alleged occurred while he was incarcerated at the Monroe County Jail. (Dkt. 99 at 1-10). The Court acknowledges there is potential probative value from the testimony of the witnesses Plaintiff is seeking to depose but has concerns that militate towards requiring Plaintiff to clarify and supplement his request before granting it.

The Court is concerned that the five depositions sought will be unreasonably cumulative or duplicative. It is not explicit in Plaintiff's submissions that any of the five incarcerated potential deponents were themselves incarcerated at the Monroe County Jail or for what period they may have overlapped with Plaintiff, and the only additional information Plaintiff offers is that each potential deponent has knowledge of the same list of 13 exhibits. (*See id.*) This concern is amplified by the inherent logistical and safety challenges involved in deposing incarcerated individuals, particularly here where each of the five potential deponents are, according to Plaintiff, incarcerated at different facilities from each other and from Plaintiff.

Beyond stating that he seeks to take the proposed depositions by video or telephone, Plaintiff "has not detailed by what means the depositions shall be taken, that is, the method of recording and the officer before whom the deposition is to be conducted." *Braham*, 2011 WL 4809032, at *1 (denying plaintiff's motion to depose three incarcerated individuals without prejudice due to insufficient detail regarding what discoverable information the proposed deponents might have, the basic logistics

of how the proposed depositions would be conducted, information on possible security and logistical concerns, and how plaintiff intended to cover the costs of the proposed depositions); *see Clark v. Kanive*, No. C10–5203, 2010 WL 4568798, at *3 (W.D. Wash. Nov. 3, 2010) (denying plaintiff's request to subpoena other inmates after "consider[ing] the safety risks created when one inmate seeks to orally depose a witness"); *Krupp v. City of St. Louis Justice Center*, No. 4:07CV883, 2007 WL 4233558, at *1 (E.D. Mo. Nov. 28, 2007) (denying prisoner's motion for leave to depose other inmates because "Plaintiff has not told the Court why he needs to depose the inmates. Without this information, the Court is unable to determine if the inmate's testimony will be probative or unreasonably cumulative and duplicative. Moreover, allowing depositions without knowing whether they will have any probative value places an undue burden on the inmates, the jail, and Defendants.").

The Court also reiterates that the party seeking a deposition is responsible for its costs. Fed. R. Civ. P. 30(b)(3), 30(c)(1), 31(b). Without additional information from Plaintiff, the Court has concerns about his resources, especially given the burden and potential expense to coordinate and fund depositions of five individuals across five different correctional facilities. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); *Gaia v. Smith*, No. C–09–212, 2010 WL 1257820, at *1 (S.D. Tex. Mar. 24, 2010) (denying prisoner-plaintiff's motion for leave to depose inmates "without prejudice subject to a request by plaintiff as to the method of the depositions as well as an indication as to how the fees and expenses consistent with those depositions will be paid"); *Braham*, 2011 WL 4809032, at *1 (noting in its denial of plaintiff's motion to depose three incarcerated

individuals that "although the plaintiff represents that he is not asking the court to pay for the depositions, it appears that his prisoner trust account is insufficient to cover the costs of three depositions. He has not explained how he would fund the expenses associated with the depositions.").

In denying without prejudice Plaintiff's request to depose the five named incarcerated individuals, the Court notes that it has extended fact discovery by 60 days—to December 21, 2026—and that Plaintiff already has a referral to PSAP for Prisoners to assist with serving and responding to discovery. Further, the Court flags that "'[d]epositions by written questions provide an affordable, alternative means of discovery for parties who need to conduct discovery from a nonparty but who do not wish to incur the high cost of a full oral deposition.'" *Braham*, 2011 WL 4809032, at *2 n.2 (quoting 7 Moore's Federal Practice § 31.02[1] (3d ed. 2011)).

If Plaintiff chooses to refile his request, he must set forth the information he believes each proposed deponent possesses regarding this case, the amount of time needed for each deposition, the method of recording, the estimated cost of the depositions, and the way Plaintiff intends to pay these costs. *See Braham*, 2011 WL 4809032, at *2; *Beckles v. Artuz*, No. 01CIV10016 (BSJ)(HBP), 2005 WL 702728, at *2 (S.D.N.Y. Mar. 25, 2005) (ordering prisoner plaintiff "to submit a proposed plan for conducting the depositions he seeks. The proposal should address how the depositions will be conducted," including who "will administer the oath.")

### D. "Assistance" with Depositions (Dkt. 104 at 1; Dkt. 108 at 1)

To the extent that Plaintiff seeks additional "assistance" with conducting depositions (*see* Dkt. 104 at 1 ("I Quentin Marozzi would like to ask for . . . assisted time to depose defendants."); Dkt. 108 at 1 (asking the Court to "assist the Defendants to set a time so Plaintiff can [depose] Defendant Blake Catlin and Trinity Service Group, Inc.")), those requests are denied without prejudice.

The Court has provided Plaintiff some relief by extending fact discovery by 60 days. It is unclear what else Plaintiff may be seeking when he asks for "assisted time to depose defendants." As explained, Plaintiff does not need leave of Court to depose parties to this case under the circumstances as they exist presently. Plaintiff currently has a referral to PSAP for Prisoners for "assistance with serving and responding to discovery demands." (Dkt. 44; Dkt. 84). In light of the assistance and guidance that is already available to Plaintiff, the vagueness of Plaintiff's request, and the extension of fact discovery, Plaintiff's request for "assisted time to depose defendants" is denied without prejudice.

It is also not entirely clear from Plaintiff's October 19, 2026 motion seeking assistance to "set a time" for defendant Catlin's and Trinity's depositions, but the Court understands Plaintiff to be raising a discovery dispute regarding scheduling depositions of Trinity and Catlin. If that is in fact the case, Plaintiff must follow the Court's individual practices set forth again above to first submit a letter, not a formal motion, to the Court providing sufficient detail of the basis for the discovery dispute and requesting a discovery conference. Plaintiff's submission provides no description

of, for example, his attempts to schedule any deposition, Defendants' responses or lack thereof, or any record of him noticing a deposition that a defendant(s) has not appeared for. As stated, and in the manner submitted, the motion is denied without prejudice.

## IV. Additional Relief Requested (Dkt. 108 at 6)

On October 19, 2026, Plaintiff also included a request for the Court to "send a copy of the moot (1) supplemental complaint with exhibits and a copy of the (2) preliminary injunction." (Dkt. 108 at 6). The Court understands Plaintiff to be requesting copies of Dkt. 97, the July 2026 "supplemental complaint" that the Court struck from the record (*see* Dkt. 98), and Dkt. 81, Plaintiff's pending May 2026 motion for a preliminary injunction. This request is granted. The Clerk of Court is directed to mail to Plaintiff a copy of (1) Dkt. 97; (2) Dkt. 81; (3) a copy of this Decision and Order; and (4) the full docket sheet, current with the date of this Decision and Order. However, Plaintiff is warned that "*[p]ro se* litigants do not have a general right to free copies of court documents." *Rivera v. Washburn*, No. 04-CV-6279L, 2008 WL 117945, at *2 (W.D.N.Y. Jan. 10, 2008). Going forward, Plaintiff should retain for his own reference a copy of any documents that he submits to the Court and should not anticipate that the Court will provide him with free copies if he fails to do so.

## V. Future Motion Practice

Before issuing three of the four previous Amended Scheduling Orders in this case, the Court held a discovery status conference, with Plaintiff in attendance, to discuss current issues, pending motions, and changes to the case management

schedule. (Dkt. 43; Dkt. 45; Dkt. 83; Dkt. 85; Dkt. 95; Dkt. 96). All of the Court's Orders and filings by Defendants are mailed to Plaintiff as a matter of course. The fourth prior Amended Scheduling Order was issued after granting an extension request by Trinity, and Plaintiff was served with Trinity's motion and the Court's Orders. (Dkt. 49; Dkt. 52; Dkt. 53). Plaintiff is well-aware of the deadlines in his case and has been an active participant in the process of setting and resetting them. The Court will also issue and mail to Plaintiff the Amended Scheduling Order that memorializes the 60-day extension ordered in the instant Decision and Order.

The Court has granted Plaintiff considerable leeway given his *pro se* status. However, at this stage, the Court has alerted Plaintiff to the deficiencies addressed in this Decision and Order on multiple occasions, has referred Plaintiff to PSAP for Prisoners, and Plaintiff has communicated to the Court that he has been receiving assistance and guidance from the same since the end of June 2026. **Plaintiff is advised that he is expected to comply with Court orders and applicable law and rules of civil procedure.** *See, e.g., Smith*, 2026 WL 1256291, at *15 (*pro se* status does not excuse non-compliance).

**Plaintiff is further advised that continuing on his current course of motion practice will likely result in sanctions.** (*See also* Dkt. 96 at 2 (Court's most recent Amended Scheduling Order, stating in bold: "In accordance with Fed. R. Civ. P. 16(f), if a party or party's attorney fails to obey this scheduling order or fails to participate in good faith, the Court will enter appropriate sanctions against that

party or that party's attorney, including dismissal of this action, if appropriate."); Dkt. 45 at 2; Dkt. 53 at 2; Dkt. 85 at 2).

"A scheduling order entered by a court is 'not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by [the parties] without peril.'" *Hassoun v. Searls*, 467 F. Supp. 3d 111, 134 (W.D.N.Y. 2020) (quoting *Kassim v. City of Schenectady*, 221 F.R.D. 363, 365 (N.D.N.Y. 2003)) (denying untimely request to amend witness and exhibit lists). "Further, the dates contained in such an order are 'not mere suggestive guideposts; they are meaningful deadlines established by the court, in consultation with the litigants, intended to [e]sure that the ends of justice and the need for prompt and efficient adjudication of controversies are met.'" *Id.* (quoting *Am. Honda Motor Co. v. V.M. Paolozzi Imps., Inc.*, No. 7:10-CV-955 FJS/ATB, 2013 WL 1296421, at *2 (N.D.N.Y. Mar. 26, 2013)).

"[P]arties may not safely assume 'that scheduling orders will be modified simply upon request.'" *Shemendera v. First Niagara Bank N.A.*, 288 F.R.D. 251, 253 (W.D.N.Y. 2012) (quoting 6A Wright, Miller, Kane, Federal Practice & Procedure (Civil) § 1522.2 (3d ed.)). The Court's scheduling orders have consistently provided that "[n]o extension" to stated deadlines will be granted "except upon written application, made <u>prior to the cutoff date</u>, showing good cause for the extension." (*See* Dkt. 26 at 2; Dkt. 45 at 2; Dkt. 53 at 2; Dkt. 85 at 2; Dkt. 96 at 2). The undersigned's "discretion to grant that relief is limited by Rule 16(b)(4), which requires 'good cause' for an extension of a scheduling order deadline." *Shemendera*, 288 F.R.D. at 253. "That Rule 'is, in every pertinent respect, as binding as any statute duly enacted by

Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions.'" *Id.* (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)).

Plaintiff has demonstrated his capability to adhere to these standards (*see, e.g.,* Dkt. 92), yet he continues to file a barrage of motions that blanketly ignore the Court's orders and applicable legal standards. Although the Court has extended the remaining deadlines by 60 days, the Court emphasizes that the deadline to join parties and amend pleadings remains long expired and at no point has any party made a request to have it extended.

Furthermore, Plaintiff's motions regarding discovery continue to demonstrate a disregard for the Federal and Local Rules of Civil Procedure and the Court's specific direction and prior orders addressing the same types of issues that persist in Plaintiff's recent motions. During discovery conferences, Plaintiff consistently states that he "understands" the Court's direction regarding the discovery process and the applicable rules. Since June 2026, Plaintiff has had the benefit of PSAP for Prisoners for "assistance with serving and responding to discovery demands." (*E.g.*, Dkt. 84). The Court expects Plaintiff to utilize the resources available to him as well as the guidance from the Court in order to curb practices that are directly at odds with pursuing "prompt and efficient adjudication of [the] controversies" that Plaintiff has raised in this case. *Hassoun*, 467 F. Supp. 3d at 134 (quotation omitted).

Lastly, Plaintiff is well-aware of the undersigned's individual practices for raising discovery disputes, which does *not* involve formal motion practice without

having first sent a letter to the Court detailing the dispute, after which point the Court will determine whether to schedule an informal conference to discuss the issues. (*See, e.g.*, Dkt. 40 (denying Trinity's motion to compel without prejudice for failure to adhere to the undersigned's individual practices); Dkt. 42-43 (holding a discovery conference after Trinity filed the requisite letter); Dkt. 83 (the Court advising Plaintiff during the May 18, 2026 status conference that "[i]f the discovery issues persist after consulting an attorney, Plaintiff may send a letter requesting a discovery conference")). Plaintiff is expected to comply, just as the Court expects Defendants to comply with all Court orders and applicable rules and law.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for leave to depose incarcerated individuals (Dkt. 99) is denied without prejudice. Plaintiff's motion for leave to depose Defendants (Dkt. 103) is denied without prejudice to the extent Plaintiff seeks to depose any Defendant by both oral "and" written examination and is otherwise denied as moot. Plaintiff's motion to supplement his complaint (Dkt. 104) is denied for failure to satisfy Federal Rules of Civil Procedure 15 and 16(b)(4), and his motion to have "assisted time" to depose Defendants (Dkt. 104) is granted to the extent of a 60-day extension to fact discovery but is otherwise denied without prejudice. Plaintiff's motion requesting that the Court "examine and store" his Operative Discovery Requests (Dkt. 105) is denied as moot. Plaintiff's omnibus motion (Dkt. 108) is granted to the extent of a 60-day extension to remaining case

management deadlines and the Court's mailing of requested documents from the docket, is denied as moot in part, and is otherwise denied.

The Clerk of Court is respectfully directed to mail to Plaintiff a copy of: (1) Dkt. 97; (2) Dkt. 81; (3) a copy of this Decision and Order; and (4) the full docket sheet, current with the date of this Decision and Order. The parties are directed to note in future filings of discovery materials that they are "Discovery Materials" as defined by Local Rule of Civil Procedure 5.2(f)(1) and that such documents should be appropriately restricted pursuant to Local Rule of Civil Procedure 5.2(f)(3). The parties shall supplement the record with any discovery materials that have not yet been filed.

**Plaintiff is advised that he is expected to comply with court orders and applicable law and rules of civil procedure. Plaintiff is further advised that continuing on his current course of motion practice will likely result in the imposition of sanctions**.

**SO ORDERED.**

Colleen D. Holland
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
October 28, 2026